**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| WASEEM DAKER,<br>     Plaintiff,<br>                    v.<br>TYRONE OLIVER,<br>     Defendant. | Civil Action No.<br>1:24-cv-02687-SDG-JKL |

**OPINION AND ORDER**

On November 22, 2023, Waseem Daker filed a complaint in Fulton County Superior Court against Georgia Department of Corrections (GDC) Commissioner Tyrone Oliver.[1] On June 20, 2024, Oliver removed the action to this Court under 28 U.S.C. §§ 1331, 1441(a), and 1446.[2]

**I.   Background**

In the operative complaint,[3] Daker asserts that the GDC's enforcement of its grooming policy—which mandates that male prisoners may not wear beards longer than half an inch—violates the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA),

---

[1]   ECF 1-2, at 25–93; Compl., *Daker v. Oliver*, No. 23CV389343 (Fulton Cnty. Super. Ct. Nov. 22, 2023).

[2]   ECF 1.

[3]   ECF 124. The operative complaint is the one Daker originally filed in the state court because this Court struck the amended complaint filed after removal. ECF 123.

1

and the Georgia Constitution.[4] In particular, Daker alleges that he is Muslim and that his faith requires him to wear a "fist-length" (*i.e.*, approximately 3 inches) beard.[5] He further contends that the GDC's use of physical force to implement its grooming policy violates the Eighth Amendment and the Georgia Constitution. Finally, Daker asserts that he was denied procedural due process (1) because he was issued disciplinary reports based on his refusal to shave his beard; (2) when he was assigned to Tier II segregated confinement based on those disciplinary reports; and (3) because of his continued assignment to Tier II.[6]

The Federal Rules of Civil Procedure provide that a court may "at any time, [and] on just terms . . . sever any claim against a party." Fed. R. Civ. P. 21. A federal court enjoys broad discretion to sever claims and parties if it concludes that joinder would cause prejudice to a party or delay resolution of the case. *Daker v. Barnes*, 2024 WL 3373557, at *4 (11th Cir. July 11, 2024) (noting that a district court may sever any claim against a party and that the decision to sever is reviewed for abuse of discretion); 7 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1689 (3d ed. 2025) (hereinafter, WRIGHT & MILLER) (indicating that Rule 21 applies to the severance of claims as well as parties); *see also Swan v. Ray*, 293 F.3d 1252, 1253

---

4   *See, e.g.*, ECF 124, ¶ 149.

5   *Id.* ¶¶ 11–22.

6   *Id.* ¶¶ 77–148, 152–159.

(11th Cir. 2002) (per curiam) ("The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices.") (citation omitted). "A court may sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties." WRIGHT & MILLER § 1689; *see also Radtka v. Wal-Mart Stores, Inc.*, 2019 WL 3067946, at *1 (S.D. Fla. July 12, 2019) ("Although severance is generally related to the misjoinder of parties, it is not so limited."). Courts consider several factors in deciding whether severance is appropriate, including "whether the claims arise out of the same transaction or occurrence, whether the claims present different issues of fact or law, whether the settlement of claims or judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof would be required." *Radtka*, 2019 WL 3067946, at *1.

## II.     Discussion

Here, Daker asserts claims based on two distinct types of alleged harm: those related to the GDC's enforcement of its grooming policy against him and those concerning his placement and retention in Tier II confinement. Although Daker contends the latter set of claims stems from the alleged violations of his religious rights, the core of these classification claims is that he was allegedly denied procedural due process when disciplinary reports were assessed against

him and he was assigned to and retained in Tier II based on those reports.[7] As such, the classification claims (1) present markedly different issues of fact and law than Daker's religious exercise claims stemming from the GDC's grooming policy; (2) are more appropriately brought against persons not currently named as Defendants; and (3) greatly expand the scope of potential discovery well beyond that relevant to causes of action based on the GDC's grooming policy and forcible shaving of Daker pursuant to that policy. *Radtka*, 2019 WL 3067946, at *1.

In particular, the presence of Daker's Tier-II-due-process claims has enlarged the scope of possible discovery to include disciplinary hearings and appeals, classification determinations, and periodic Tier reviews spanning multiple years.[8] Discovery has also widened to encompass whether the conditions of Tier II confinement constitute an "atypical, significant deprivation" that triggers procedural due process protections. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995) (holding that the prisoner-plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

---

[7]   *Id.*

[8]   *Id.*

This Court has consistently characterized this case as one about the GDC's grooming policy; discovery therefore should have been straightforward.[9] It has instead been acrimonious, combative, and unnecessarily disruptive—resulting in Daker filing over *thirty* motions to compel discovery or for discovery sanctions, among scores of other discovery motions.[10] Daker's abusive discovery practices and repetitive filings have "unnecessarily turned a fairly simple case into a marathon," substantially burdened this Court's limited resources, and materially delayed the resolution of the case.[11]

Further, Daker has filed a separate habeas action in this Court that *also* challenges his placement on Tier II confinement.[12] There, Daker challenges the same disciplinary reports, disciplinary proceedings, and periodic Tier reviews at issue here. Daker's habeas petition mirrors the claims in this action, asserting that

---

[9]   ECF 109, at 7 ("Nor does Daker's complaint raise complex legal issues. He asserts his religious beliefs require him to have a beard of a certain length, and prison officials have forcibly prevented him from maintaining that length. Discovery should not be complicated; the legal issues are clear.").

[10]  *See, e.g.*, ECFs 141, 142, 145, 165, 166, 168, 169, 170, 171, 172, 173, 184, 207, 211, 212, 213, 214, 215, 225, 226, 228, 251, 252, 256, 257, 258, 263, 266, 269, 306, 345.

[11]  Permanent Injunction Order, *Daker v. Deal*, No. 1:18-cv-5243-SDG, ECF 57, at 15 (N.D. Ga. Aug. 4, 2020).

[12]  Am. Pet., *Daker v. Jones*, No. 4:25-cv-0084-SDG-JKL, ECF 10 (N.D. Ga. July 10, 2025). Daker initiated the habeas case on April 11, 2025. *Id.*, ECF 1.

5

his placement and retention on Tier II violates procedural due process, substantive due process, and the Equal Protection Clause of the Fourteenth Amendment.[13]

## III. Conclusion

The presence of Daker's classification claims in this action has bloated the scope of discovery; has raised materially different issues of fact and law; requires different documentary proof; involves different potential defendants and witnesses; and has taxed the Court's limited resources and ability to manage its docket. Accordingly, the Court finds that severance of Daker's classification claims from this case would greatly facilitate judicial economy, expedite the resolution of his grooming-policy claims, and curb duplicative and abusive litigation. *See* Fed. R. Civ. P. 21; *Swan*, 293 F.3d at 1253; *Radtka*, 2019 WL 3067946, at *1.

### A. Severance

Daker's claims regarding (1) the assessment of disciplinary reports #946076, #946521, #946522, #946523, and #946524; (2) his placement in Tier II segregated confinement; and (3) his retention in Tier II segregated confinement are **SEVERED** from this action pursuant to Fed. R. Civ. P. 21 and this Court's inherent authority to manage its docket. Daker's pending motions for leave to amend the complaint are **DENIED without prejudice**.[14]

---

[13]  *See, e.g., id.* ¶¶ 22–39, 44–75.

[14]  ECFs 190, 262.

The Clerk is **DIRECTED** to open a new case, *Daker v. Oliver (Oliver II)*, and to docket ECF 124 as the complaint in the new case and ECF 2 as the answer. Daker is not required to pay a new filing fee in connection with the opening of *Oliver II*. Daker's claims in *Oliver II* will be limited to those based on the alleged denial of procedural due process (1) in connection with disciplinary reports #946076, #946521, #946522, #946523, and #946524; (2) his assignment to Tier II segregated confinement based on those disciplinary reports; and (3) his continued assignment to Tier II. No later than **December 31, 2025**, Daker may file an amended complaint in *Oliver II* to add any defendant against whom such claims may properly be brought. Daker may not amend the substance of his pleading in *Oliver II* to add to or expand on these claims. Daker may, however, seek leave to amend to refine or revise such claims. Any such motion for leave must attach the proposed amendment as an exhibit and be filed no later than **January 30, 2026**.

B.   **Scheduling Order**

Because this Order substantially narrows the scope of discovery relevant to Daker's grooming-policy claims, the Court **GRANTS** a new four-month discovery period in this action. This new discovery period will commence on **December 31, 2025**, 30 days after entry of this Order, and will end on **April 30, 2026**. All pending motions concerning discovery requests, discovery sanctions, or other discovery matters related to the prior discovery period that commenced on December 20,

7

2024, and ended on May 19, 2025 are **DENIED as moot**, as are all dispositive motions.[15] Any future motion seeking relief related to the prior discovery period will be summarily stricken from the docket.

Any motion for leave to amend a pleading must attach the proposed amendment as an exhibit. Any such motion for leave filed after January 30, 2026 will summarily be stricken from the docket.

Daker must designate all testifying experts and provide written expert reports to Oliver pursuant to Fed. R. Civ. P. 26(a)(2)(B) and LR 26.2(C), NDGa, **no later than January 30, 2026**.

Oliver must designate all testifying experts and provide written expert reports to Daker pursuant to Fed. R. Civ. P. 26(a)(2)(B) and LR 26.2(C), NDGa, **no later than March 2, 2026**.

Daker must produce any rebuttal expert reports **no later than April 1, 2026**.

Motions for summary judgment must be filed **no later than May 1, 2026**. LR 56.1(D), NDGa (providing that motions for summary judgment shall be filed no later than 30 days after the close of discovery); Fed. R. Civ. P. 6(a)(1)(C). Any opposition to a motion for summary judgment must be filed within 21 days after

---

[15] ECFs 141, 142, 145, 159, 161, 163, 165, 166, 168, 169, 170, 171, 172, 173, 184, 199, 202, 207, 208, 209, 210, 211, 212, 213, 214, 215, 221, 222, 225, 226, 228, 229, 234, 251, 252, 256, 257, 258, 261, 263, 266, 269, 293, 298, 302, 306, 307, 314, 328, 329, 332, 334, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 354.

the motion for summary judgment is filed. LR 56.1(A), NDGa. A moving party may file a reply brief no later than 14 days after the opposition brief is filed. All opening briefs are limited to 25 pages and reply briefs are limited to 15 pages **<u>unless leave to exceed the page limit is obtained from the Court in advance of the filing deadline</u>**.

No deadline set forth in this Order will be modified absent a showing of good cause.

### C. Scope of Discovery

Consistent with this Order, the scope of discovery in this action is limited to matters relevant to the following claims and any defense thereto:

> 1. Whether the GDC's grooming policy (requiring that inmates have a beard of no more than one-half inch in length), as applied to Daker, violates the Free Exercise Clause of the First Amendment to the United States Constitution, the RLUIPA, and the Georgia Constitution Art. 1, § 1, para. III; and
>
> 2. Whether the GDC's alleged use of physical force against Daker to enforce its grooming policy, including the use of unsanitized or damaged clippers, violates the Eighth Amendment's Cruel and Unusual Punishments Clause and the Georgia Constitution Art. 1, § 1, para. XVII.

Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 16(b)(3)(B)(ii).

Pursuant to Fed. R. Civ. P. 26(b)(2)(A), (C), the parties are limited to 15 requests for production; 25 interrogatories, including all discrete subparts; and 15

requests for admission, absent leave of Court **obtained in advance of issuing the excessive discovery request**.

Motions to compel discovery must comply with Fed. R. Civ. P. 37(a), LR 7.1, LR 37.1, and this Order. In accordance with Fed. R. Civ. P. 37(a)(2)(A)(B) and LR 37.1(A)(1), a motion to compel must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain the disclosure or discovery without court action.

Pro se plaintiffs are not excused from Rule 37(a)(1)'s conferral-in-good-faith requirement. *See Bennett v. Chitwood*, 519 F. App'x 569, 572 (11th Cir. 2013) (affirming denial of a pro se prisoner's motion to compel where he did not make a Rule 37(a)(1) certification). Given Daker's pro se prisoner status, however, the parties may satisfy their duty to confer in good faith through written communications. Even so, the parties are **ADVISED** that the duty to confer in good faith is not satisfied by sending a single letter, and that a motion to compel is properly filed only after repeated good faith efforts to confer are ignored or rebuffed. *See, e.g., Hays v. Adam*, 512 F. Supp. 2d 1330, 1334 (N.D. Ga. 2007) (denying a motion to compel because a single letter sent to plaintiff's counsel by defendant was insufficient to satisfy Rule 37's meet-and-confer requirement); *Goodemote v. Load Express, LLC*, No. 4:18-CV-0161-HLM, 2019 WL 13213325, at *4

(N.D. Ga. June 19, 2019) (holding that the duty to confer in good faith "requires something more than mailing a single letter or demand").

**Any motion to compel discovery in this action must attach a copy of the movant's written communications served on the other party in a good faith effort to confer. The movant must also include a copy of any allegedly inadequate response, if a response is made.** The attached communications must put the other party on notice that the movant will seek an order compelling discovery on the specific grounds sought, in accordance with the requirements of LR 37.1(A)(2). **A party seeking to compel discovery must allow no fewer than ten days after service of a good faith written communication for the other party to respond before filing a motion to compel.** Motions to compel must otherwise be filed within the time allowed by LR 37.1(B).

No party may file a motion seeking sanctions under Fed. R. Civ. P. 11, Fed. R. Civ. P. 37, this Court's inherent authority, or any other provision, related to any discovery matter, without first filing a corresponding motion to compel **and** that motion to compel being granted.

**The Court will not permit the filing of repetitive or piecemeal discovery motions.** All requests to compel discovery with respect to the same request for production, set of interrogatories, set of requests for admission, or other discovery

request must be brought in the same motion. **Repetitive motions seeking the same discovery or relief will summarily be stricken from the docket.**

The parties are **WARNED** that any failure to comply with the Federal Rules of Civil Procedure, this Court's Local Rules, this Order, and any other Order of this Court may result in the dismissal of this action or an entry of default. Fed. R. Civ. P. 16(f), 37(b)(2); LR 41.3(A)(2), NDGa.

Daker's motions for a temporary restraining order and to expedite proceedings are **DENIED AS MOOT** in light of this Court's Orders of July 14, September 15, and September 22, 2025.[16]

Daker's motion to correct dockets is **GRANTED**.[17] The Clerk is **DIRECTED** to docket ECF 177 in *Daker v. Jones*, Civ. A. No. 4:24-cv-00173-SDG-JKL, as the response to the defendants' motion to dismiss in that action [ECF 69].

---

[16] ECFs 134, 152, 274, 275, 280.

[17] ECF 187.

Finally, Daker's motion for a copy of the Magistrate Judge's October 27, 2025 Report and Recommendation (the R&R) and to expand the time to file objections thereto [ECF 360] is **GRANTED**. The Clerk is **DIRECTED** to mail a copy of the R&R and service order [ECFs 350, 351] to Daker. Any objections to the R&R must be filed no later than **December 15, 2025**.

**SO ORDERED** this 1st day of December, 2025.

Steven D. Grimberg
United States District Judge